# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

| | | |
|---|---|---|
| Pinnacle Design/Build Group, Inc., | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 1:20-cv-00047 |
| | ) | |
| vs. | ) | Judge Michael R. Barrett |
| | ) | |
| Kelchner, Inc., | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## <u>ORDER</u>

This matter is before the Court on Defendant's Motion to Dismiss (Doc. 5) and Plaintiff's Motion for a Preliminary Injunction Staying/Enjoining Arbitration (Doc. 8). Both motions have been fully briefed. (*See* Docs. 5, 10, 12; 8, 11, 13). As explained below, a Sixth Circuit decision filed after the briefing was complete requires a ruling in Defendant's favor. Accordingly, Defendant's Motion will be GRANTED and, in turn, Plaintiff's Motion will be DENIED as moot.

## I. BACKGROUND

### A. Facts

Plaintiff Pinnacle Design/Build Group has filed a Complaint for Declaratory Judgment against Defendant Kelchner, Inc. pursuant to 28 U.S.C. § 2201 and Fed. R. Civ. P. 57. (Doc. 1 ¶ 1).

As relevant to the pending motions, the facts are not in dispute.

On May 22, 2013, Pinnacle (as subcontractor) and Kelchner (as contractor) entered into a Master Subcontract Agreement (the "Master Agreement") for future construction projects. (*Id.* ¶ 9; Doc. 1-1). Later, in 2017 and relating to the Crossings at Brentwood project, they entered into

1

a "Project Subcontract Agreement" that incorporated and supplemented the terms of the Master

Agreement. (Doc. 1 ¶ 10; Doc. 1-2). Article 6 of the Master Agreement is titled "Mediation and

Binding Dispute Resolution" and provides:

§ 6.1 MEDIATION
§ 6.1.1 Any claim arising out of or related to this Subcontract, except those waived in this Subcontract, **shall be subject to mediation as a condition precedent to binding dispute resolution**.

§ 6.1.2 The Parties **shall endeavor to resolve their claims by mediation** which, unless the parties mutually agree otherwise, shall be administered by the American Arbitration Association in accordance with its Construction Industry Mediation Procedures in effect on the date of the Agreement. **A request for mediation** shall be made in writing, delivered to the other party to this Subcontract and filed with the person or entity administering the mediation. The request **may be made concurrently with the filing of binding dispute resolution proceedings but, in such event, mediation shall proceed in advance of binding dispute resolution proceedings, which shall be stayed pending mediation for a period of 60 days from the date of filing, unless stayed for a longer period by agreement of the parties or court order**. If an arbitration is stayed pursuant to this Section, the parties may nonetheless proceed to the selection of the arbitrators(s) and agree upon a schedule for later proceedings. If requested by the Contractor, the Subcontractor shall participate in any mediation relating in any way to this Subcontract or to the Subcontractor's Work, including mediation initiated by the Owner, Prime Contractor, Architect, Engineer, or other persons or entities.
. . . .

6.2 BINDING DISPUTE RESOLUTION
**For any claim subject to, but not resolved by mediation pursuant to Section 6.1, the method of binding dispute resolution shall be as follows**:
. . . .

       [X]  **Arbitration** pursuant to Section 6.3 of this Agreement

       [ ]  Litigation in a court of competent jurisdiction

       [ ]  Other: *(Specify)*

6.3 ARBITRATION
6.3.1 If the Contractor and Subcontractor have selected arbitration as the method of binding dispute resolution in Section 6.2, **any claim subject to, but not resolved by, mediation shall be subject to arbitration** which,

unless the parties mutually agree otherwise, shall be administered by the American Arbitration Association **in accordance with its Construction Industry Arbitration Rules** in effect of the date of the Agreement. . . . . . . .

(Doc. 1-1 at PageID 18–19 (emphasis added)).  The American Arbitration Association

Construction Industry Arbitration Rules ("AAA Rules") specifically vest with the arbitrator the

power to rule on his or her own jurisdiction, including the "existence, scope or validity" of the

agreement or the arbitrability of any claim:

R-9. Jurisdiction

(a) The **arbitrator** shall have **the power to rule on** his or her own **jurisdiction**, including any objections with respect to **the existence, scope or validity** of the arbitration agreement.

(b) The arbitrator shall have the power to determine the existence or validity of a contract of which an arbitration clause forms a part.  Such an arbitration clause shall be treated as an agreement independent of the other terms of the contract.  A decision by the arbitrator that the contract is null and void shall not for that reason alone render invalid the arbitration clause.

(c) **A party must object to the jurisdiction of the arbitrator or to the arbitrability of a claim or counterclaim** no later than the filing of the answering statement to the claim or counterclaim that gives rise to the objection.  **The arbitrator may rule on such objections as a preliminary matter or as part of the final award.**

(Doc. 5-1 at PageID 119 (emphasis added)).

On August 15, 2019, Kelchner filed a Demand for Arbitration against Pinnacle, seeking

to be indemnified for a dispute between Kelchner and Integrated Construction, the Owner/Prime

Contractor.  (Doc. 1 ¶ 14; Doc. 1-3).  Kelchner did not seek mediation concurrently with this

demand.  (Doc. 1 ¶ 14).  Nor did it seek mediation prior to or since that filing.  (*Id.*).  On October

3, 2019, Pinnacle requested mediation with Kelchner.  (*Id.* ¶ 15; Doc. 1-4).  Kelchner has refused

to participate in mediation with Pinnacle.  (Doc. 1 ¶ 16).  Accordingly, Pinnacle filed the instant

action and requests that this Court enter a judgment declaring that: 1) Kelchner's right to

arbitrate under the Master Agreement is not enforceable because mediation has not occurred; 2) Kelchner has waived the right to mediate its claims against Pinnacle under the Master Agreement; and 3) Pinnacle is under no contractual obligation to participate in the mediation or arbitration of Kelchner's claims.  (*Id.* PageID 8 (request for relief)).

### B.  Procedural Posture

Kelchner moves to dismiss Pinnacle's Complaint for Declaratory Judgment pursuant to Fed. R. Civ. P. 12(b)(6), "because the parties have a valid arbitration clause, and whether the parties satisfied the condition precedent of mediation is a question for the arbitrator."  (Doc. 5 at PageID 90).  Pinnacle opposes Kelchner's motion (*see* Doc. 10), and, pursuant to Fed. R. Civ. P. 65 and S.D. Ohio Civ. R. 65.1, additionally has filed a Motion for Preliminary Injunction Staying/Enjoining Arbitration between Kelchner and Pinnacle (Doc. 8).  Because Kelchner continues to pursue arbitration "in violation of Pinnacle's contractual rights[,]" Pinnacle asks the Court to maintain the status quo "[u]ntil the merits of this action have been considered[.]"  (*Id.* at PageID 147).  Kelchner opposes Pinnacle's motion for injunctive relief, contending that Pinnacle "has no chance of success on the merits."  (Doc. 11 at PageID 185).

## II.    LEGAL STANDARD

The proper vehicle for dismissing a case in favor of arbitration is pursuant to Fed. R. Civ. P. 12(b)(6).  "A party's 'failure to pursue arbitration' in spite of a compulsory arbitration provision means that the party 'has failed to state a claim [upon which relief can be granted.]'" *Knight v. Idea Buyer, LLC*, 723 F. App'x 300, 301 (6th Cir. 2018) (quoting *Teamsters Local Union 480 v. United Parcel Serv., Inc.*, 748 F.3d 281, 286 (6th Cir. 2014)).

In reviewing a Rule 12(b)(6) motion, a court ordinarily would examine the complaint to determine whether it contained "enough facts to state a claim for relief that is **plausible** on its

face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (emphasis added).  A district court examining the sufficiency of a complaint must accept the well-pleaded allegations of the complaint as true.  *Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)*; *DiGeronimo Aggregates, LLC v. Zemla*, 763 F.3d 506, 509 (6th Cir. 2014).  Here, though, the issue is not whether Pinnacle has a viable claim, but, instead, concerns whether this Court or an arbitrator should hear it.  *See Great Am. Ins. Co. v. Johnson Controls, Inc.*, No. 1:20-cv-96, 2020 WL 4569126, at *5 (S.D. Ohio Aug. 7, 2020).

On a Rule 12(b)(6) motion, a district court "may consider exhibits attached [to the complaint], public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the complaint and are central to the claims contained therein, without converting the motion to one for summary judgment." *Rondigo, L.L.C. v. Twp. of Richmond*, 641 F.3d 673, 681 (6th Cir. 2011) (internal quotation and citation omitted).  Thus, the Sixth Circuit has taken a liberal view of what matters fall within the pleadings for purposes of Rule 12(b)(6).  *See Armengau v. Cline*, 7 F. App'x 336, 344 (6th Cir. 2001).  The ability of the court to consider supplementary documentation has limits, however, in that it must be "clear that there exist no material disputed issues of fact concerning the relevance of the document."  *Mediacom Se. LLC v. BellSouth Telecomms., Inc.,* 672 F.3d 396, 400 (6th Cir. 2012) (internal quotation and citation omitted).  Here, there is no material disputed issue of fact that both the Master Agreement (referred to in and attached to Pinnacle's Complaint) and the AAA Rules (referred to in the Master Agreement and attached to Kelchner's Motion to Dismiss) are relevant to the question presented to the Court for review.

### III.    ANALYSIS

Pinnacle and Kelchner both agree that they are subject to the Master Agreement.
Pinnacle, however, contends that it did not contract to submit *all* disputes to arbitration, but,
rather, *only disputes that the parties first mediate*.  (*See* Doc. 10 at PageID 180 ("[T]he parties
agreed to submit **only a limited number of claims to arbitration—those that had been first
submitted to mediation**, but were not resolved through mediation.  Without any claims having
been mediated, there is, at this time, nothing to arbitrate under the terms of the Master
Agreement.") (emphasis in original)).  In Pinnacle's view, claims that have not been mediated
are "carved out" of the delegation to the arbitrator and are appropriately resolved by the Court.

Kelchner, on the other hand, insists that the mediation clause is "a condition precedent"
and whether a condition precedent has been satisfied is a "procedural" (also known as a
"subsidiary") question for the arbitrator to decide.  *Howsam v. Dean Witter Reynolds, Inc*., 537
U.S. 79, 83–85 (2002) (citing *John Wiley & Sons, Inc. v. Livingston*, 376 U.S. 543, 557 (1964)
(holding that an arbitrator should decide whether the first two steps of a grievance procedure
were completed, where these steps are "prerequisites" to arbitration)).  Kelchner quotes from
Article 6 of the Master Agreement, which expressly states that mediation is "a condition
precedent to binding dispute resolution."  (*See* Doc. 1-1 at PageID 18).  But even if a gateway
question, Kelchner contends that the parties delegated questions of arbitrability to the *arbitrator*
by incorporating AAA's Construction Industry Arbitration Rules into their Master Agreement.

"Arbitration is a matter of contract and a party can not be required to submit to arbitration
any dispute which he has not agreed so to submit."  *Retail Clerks Int'l Ass'n, Local Unions Nos.
128 & 633 v. Lion Dry Goods, Inc.*, 341 F.2d 715, 719 (6th Cir. 1965).  "Arbitration under the
[Federal Arbitration] Act is a matter of consent, not coercion, and parties are generally free to

structure their arbitration agreements as they see fit." *Volt Info. Sciences v. Bd. of Trs. of Leland Stanford Junior Univ.*, 489 U.S. 468, 479 (1989). "[C]ourts must 'rigorously enforce' arbitration agreements according to their terms[.]" *Am. Express Co. v. Italian Colors Rest.*, 570 U.S. 228, 233 (2013) (quoting *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 221 (1985)). "The Act allows parties to agree by contract that an arbitrator, rather than a court, will resolve threshold arbitrability questions as well as underlying merits disputes." *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 527 (2019). "This Court has consistently held that parties may delegate threshold arbitrability questions to the arbitrator, so long as the parties' agreement does so by 'clear and unmistakable' evidence. *Id.* at 530 (quoting *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)).

Kelchner's arguments carry the day. Section 6.1.1 of the Master Agreement labels mediation as "a condition precedent." (Doc. 1-1 at PageID 18 ("Any claim arising out of or related to this Subcontract, except those waived in this Subcontract, shall be subject to **mediation as a condition precedent** to binding dispute resolution.") (emphasis added)). Whether it has been satisfied, then, is a subsidiary question reserved to the arbitrator. As the Sixth Circuit explains:

> **Subsidiary questions** grow out of the dispute and bear on its final disposition; and they include, for example, issues related to waiver, delay or **whether a condition precedent to arbitrability has been fulfilled**. Once a court decides that the parties have agreed to resolve a particular dispute through arbitration, it follows almost *a fortiorari*—absent clear language to the contrary in the parties' agreement—that they would have agreed to have an arbitrator decide these subsidiary questions as well.

*Reed Elsevier, Inc. v. Crockett*, 734 F.3d 594, 597 (6th Cir. 2013) (cleaned up) (emphasis added)). Here the parties included a condition precedent (mediation) to arbitration; whether it occurred, therefore, is a question for the arbitrator and not the Court.

But, even if a gateway question, the arbitrator still decides. Section 6.3.1 of the Master Agreement states that claims subject to arbitration shall be administered by the AAA "in accordance with its Construction Industry Arbitration Rules[.]" (Doc. 1-1 at PageID 18). And Rule 9 expressly confers to the arbitrator the "power" to decide questions of arbitrability. (Doc. 5-1 at PageID 119 ("The **arbitrator** shall have **the power to rule on** his or her own **jurisdiction**, including any objections with respect to **the existence, scope or validity** of the arbitration agreement.") (emphasis added)). By virtue of incorporating the AAA rules into their contract, then, the parties have clearly and unmistakably delegated the arbitrability question to the arbitrator. *Blanton v. Domino's Pizza Franchising LLC*, 962 F.3d 842 (6th Cir. 2020).[1] Thus, this Court lacks power to decide the arbitrability issue that Pinnacle frames: whether, by failing to mediate, Kelchner has waived its ability to pursue arbitration. *See Henry Schein*, 139 S. Ct. at 529.

In dicta, *Blanton* also squarely addresses, and rejects, Pinnacle's "carve out" argument. 962 F.3d at 847–48. Citing a case upon which Pinnacle relies, *Archer & White Sales, Inc. v. Henry Schein, Inc.*, 935 F.3d 274, 280–82 (5th Cir. 2019), *cert. granted* — S. Ct. —, 2020 WL 3146679 (June 15, 2020) (No. 19-963), the Sixth Circuit comments that "some courts have read

---

[1] It is true that the arbitration provision in *Blanton* incorporated the AAA Rules for Resolution of Employment Disputes ("Employment Rules") rather than the AAA Construction Industry Arbitration Rules ("Construction Rules"). 962 F.3d at 844. This distinction, however, is the proverbial one without a difference. In deciding *Blanton*, the Sixth Circuit joined eleven out of twelve sister circuits that have "found that incorporation of the AAA Rules (or similarly worded arbitral rules) provides 'clear and unmistakable' evidence that the parties agreed to arbitrate 'arbitrability.'" *Id.* at 846 (collecting cases). One of those cases cited in *Blanton* is *Petrofac, Inc. v. DynMcDermott Petrol. Operations Co.*, in which the Fifth Circuit determined that the parties' incorporation of the AAA *Construction* Rules into their arbitration agreement "presents clear and unmistakable evidence that the parties agreed to arbitrate arbitrability." 687 F.3d 671, 674–75 (5th Cir. 2012). Moreover, the text of the AAA Employment Rules as cited in *Blanton* is verbatim identical to the text of AAA Construction Rule 9(a). *Compare Blanton*, 962 F.3d at 844 *with* Doc. 5-1 at PageID 119.

*Blanton* was decided and filed on June 17, 2020, approximately three months after the reply briefs in support of both pending motions. Neither Kelchner nor Pinnacle filed a notice of supplemental authority.

similar provisions more narrowly when an arbitration agreement carves out certain claims from the very provision that incorporates the AAA Rules." *Id.* at 847.[2] But that does not mean that the agreement delegates arbitrability to the arbitrator for all disputes *except* for those under the carve-out:

> [T]o the extent that [an] arbitration agreement carves out certain claims from arbitration, it does so from the agreement in general, not from the provision that incorporates the AAA Rules. So the carveout goes to the *scope of the agreement*—a question that the agreement otherwise delegates to the arbitrator—not the *scope of the arbitrator's authority* to decide question of "arbitrability."

*Id.* at 848 (emphasis in original) (citing *Oracle Am., Inc. v. Myriad Grp. A.G.*, 724 F.3d 1069, 1076 (9th Cir. 2013); *Ally Align Health, Inc. v. Signature Advantage*, *LLC*, 574 S.W.3d 753, 757–58 (Ky. 2019)). This follow-up discussion suggests that, faced with the issue, the Sixth Circuit would reach a different result than the Fifth Circuit in *Archer & White*. Rather, like the Ninth Circuit in *Oracle*, the Sixth Circuit would reason that Pinnacle's argument "conflates the *scope* of the arbitration clause, *i.e.*, which claims fall within the carve-out provision, with the question of *who* decides arbitrability." *See Oracle*, 724 F.3d at 1076 (emphasis in original). *Blanton*'s holding—and on-the-mark dicta—require a ruling in Kelchner's favor.

---

[2] The arbitration clause in *Archer & White* reads in pertinent part:

> Any dispute arising under or related to this Agreement **(except for actions seeking injunctive relief and disputes related to trademarks, trade secrets, or other intellectual property of Pelton & Crane)**, shall be resolved by binding arbitration in accordance with the arbitration rules of the American Arbitration Association.

935 F.3d at 277 (emphasis added). The carve-out clause contained within, bolded for emphasis, explicitly identifies which claims go to arbitration and which claims go to court. This language is quite different from the language that Pinnacle claims to be a carve-out. (*See* Doc. 1-1 at PageID 18 **("[A]ny claim subject to, but not resolved by, mediation** shall be subject to arbitration which, unless the parties mutually agree otherwise, shall be administered by the American Arbitration Association in accordance with its Construction Industry Arbitration Rules.") (emphasis added)). But carve-out or not, the Court recognizes for purposes of this exercise that—just as is the case in *Archer & White*—the language does appear in the same provision that incorporates the AAA Rules,

Pinnacle is obligated to proceed to arbitration.  Its Complaint seeking a declaratory judgment to the contrary, therefore, fails to state a claim upon which relief can be granted. *Knight*, 723 F. App'x at 301.  With dismissal warranted, Pinnacle's outstanding motion for injunctive relief must be denied as moot.

## IV.    CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss (Doc. 5) is **GRANTED** and Plaintiff's Motion for a Preliminary Injunction Staying/Enjoining Arbitration (Doc. 8) is **DENIED as moot**.

**IT IS SO ORDERED.**

/s/ *Michael R. Barrett*
Michael R. Barrett, Judge
United States District Court